UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 685 |
| v. | ) | |
| | ) | Hon. Rebecca R. Pallmeyer |
| FREDDY CAZARES | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES of AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully submits its sentencing memorandum for defendant Freddy Cazares. For the reasons stated below, the government respectfully requests that the defendant receive a sentence within the advisory Guidelines range of 135 to 168 months' imprisonment.

**I.   BACKGROUND**

On August 30, 2008, Cazares was charged with attempted possession with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. He entered a plea of guilty on October 19, 2009, pursuant to a plea agreement. His sentencing is now set for July 26, 2010 at 10:30 a.m.

**II.   GUIDELINES CALCULATION**

The government has no objection to the Presentence Investigation Report ("PSR"), as prepared by U.S. Probation Officer Rebecca Fowlie, or the Guidelines calculations contained therein. Based on an offense level of 31, which reflects the two-level adjustment for Cazares' acceptance of responsibility and timely entry of a guilty plea, and a criminal history category of III, the advisory Guidelines range is 135 to 168 months' imprisonment.

Because the offense of conviction involved at least five kilograms of cocaine, Cazares is

subject to a mandatory minimum period of incarceration of ten years, pursuant to 21 U.S.C. § 841(a)(1). Although the government filed a notice of intention to seek enhanced statutory penalties, pursuant to 21 U.S.C. § 851, the government has agreed to dismiss the notice of prior conviction at the time of sentencing and will do so formally at the sentencing hearing.

### III.  ARGUMENT

Cazares chose not to learn from his prior federal narcotics conviction or his prior federal incarceration; chose to return to trafficking in large, multi-kilogram quantities of cocaine, and chose the company of other narcotics traffickers. While he was serving a period of incarceration for a prior federal drug-trafficking conviction involving his delivery of approximately 10 kilograms of cocaine, Cazares negotiated the sale of 25 kilograms of cocaine from a DEA confidential informant. On August 29, 2008, Cazares met with the informant and told the informant that he was going to keep two of the kilograms of cocaine and that the other individuals were going to take the remaining 23 kilograms of cocaine. Cazares brought the informant to a garage in Chicago. Inside the garage were six or seven other individuals and a Volvo SUV that contained $634,880 that was to be used to buy the kilograms of cocaine.[1] Because of his history and characteristics and considering the § 3553(a) factors, Cazares requires a sentence within the advisory Guidelines range.

---

[1] Abraham Lorenzo, aka "Edwin Ortiz," was indicted in connection with this 25 kilogram transaction in case number 09 CR 680 (N.D. Ill.) on September 2, 2009, and pleaded guilty on April 27, 2010, pursuant to a written plea agreement. In his plea agreement, Lorenzo admitted that he drove the Volvo SUV containing the $634,880 from Massachusetts to Chicago for a Massachusetts-based drug-trafficking organization and that he had intended to unload the U.S. Currency and load the kilograms of cocaine into the Volvo, and then drive the Volvo back to Massachusetts for the drug-trafficking organization. On June 24, 2010, Jose Navarro was indicted in case number 10 CR 545 (N.D. Ill.) in connection with the August 29, 2010 cocaine transaction. Following removal proceedings held in Boston, Massachusetts, he is currently being transported by the U.S. Marshals to Chicago.

### A. Cazares' History and Characteristics

Cazares was raised by two parents, had a childhood that was "more good than bad" (PSR at line 257), was close with his siblings, and was responsible for his two children, yet he has chosen to squander the benefits that he received from those relationships for the sake of repeatedly trafficking in kilogram quantities of cocaine. After being prosecuted in federal court in Ohio and while serving a sentence of 63 months' in the Bureau of Prisons, Cazares returned to drug-trafficking. He took advantage of work assignments, educational and vocational programming, and counseling services while in prison (PSR at 171-173), but he failed to apply what he learned upon his release. Instead, while serving his sentence at the Salvation Army Freedom Center, Cazares returned to drug trafficking, and in an even bigger way.

Although the report of psychological evaluation submitted by the defendant to the Court on July 23, 2010 indicates that Cazares may have mild retardation as the result of a head injury he received while incarcerated, he has never suggested that he did not understand what he was doing or the possible consequences of his actions. The injury he sustained in 2007 also did not keep him from getting into trouble while incarcerated. According to information from the Bureau of Prisons, on October 8, 2009, Cazares was found guilty of institutional misconduct, in that he committed an assault. (PSR at lines 192-197.) Even while in the Salvation Army Freedom Center, Cazares was issued several incident reports and had poor adjustment to the program. (PSR at lines 176-179.) He did not complete that program successfully due to his arrest in the instant offense. In short, Cazares' history and characteristics demonstrate the need for a sentence within the advisory Guidelines' range.

**B.     An Advisory Guideline Sentence is Appropriate.**

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. In order to determine the "particular" sentence to impose, the Court must consider the familiar statutory factors listed in § 3553(a)(1)-(7).[2] One of those factors is the advisory range set by the Sentencing Guidelines; another is the Commission's policy statements. § 3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 ( 2007). There are numerous reasons this Court should give serious consideration to the advisory Guidelines range.

First, the Sentencing Guidelines are the sole factor in § 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily-mandated factor, § 3553(a)(6). *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."); *see also Booker v. United States*, 543 U.S. 220, 250 (2005) ("Congress' basic statutory goal – a system that diminishes sentencing disparity"); *id.* at 253 ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity"); *id.* at 267 (rejecting other remedial

---

[2] Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(A)-(D).

4

alternatives because they were inconsistent with the "basic objective of promoting uniformity in sentencing"). The Supreme Court created the advisory system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker*, 543 U.S. at 264-65. The only way to prevent widespread, unwarranted disparities is to give serious consideration to the Guidelines.

Second, the Guidelines generally deserve serious consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 128 S. Ct. 594. It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007), and that there is "broad" sentencing discretion post-*Booker*. *See United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology; its judgments should not lightly be disregarded." *United States v. Wachowiak*, 496 F.3d 744, 753 (7th Cir. 2007) (internal quotation and citation omitted). Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 994(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

Third, deviations from the advisory Guidelines range are also more likely to be unreasonable if the grounds for the deviation are "overstated mitigating factors," "normal incidents" of the offense, or simple "disagreement with the culpability assumptions built into the Guidelines." *Id.* at 754. The Seventh Circuit has repeatedly admonished that "factors that are common to offenders

5

with like crimes" are less likely to be substantively reasonable and that "particularized" factors are needed to justify non-Guidelines sentences. *Id.* at 750. And the district court is not required to address each § 3553(a) factor "in a checklist fashion, explicitly articulating its conclusions regarding each one." *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008). Nor is the district court required to address each of the specific arguments advanced by counsel, particularly if they are "stock arguments" district court routinely confront at sentencings. *United States v. Martinez*, 520 F.3d 749, 753 (7th Cir. 2008) (court not required to address arguments about defendant's family situation and lack of criminal history, as those are "precisely the types of routine contentions" sentencing court can reject without discussion). *See also United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008) (district court free to reject without discussion sentencing arguments concerning defendant's family ties, seriousness of criminal history, and extent to which defendant accepted responsibility, so long as court considered § 3553 factors).

Finally, as explained below and as will be discussed in greater detail during the sentencing hearing, the § 3553(a) factors weigh a sentence within the advisory Guidelines range.

### 1. Need for Sentence Imposed to Reflect Seriousness of the Offense

One of the factors that for the Court to consider is the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. *See* § 3553(a)(2)(A). An advisory Guidelines sentence is sufficient but not greater than necessary to meet these objectives.

As he admitted in his plea agreement, on or about August 13, 2008, Cazares initially informed the DEA informant that he, Cazares, had large quantities of heroin to sell. *See* Plea Agreement at 2, attached to PSR. He even agreed to provide the informant a sample of the heroin

6

that he had to sell. *Id.* at 3. A few days later, when Cazares and Individual A, with whom Cazares was working, told the informant that they did not have any heroin, they jumped at the opportunity to purchase a majority of the 100 kilograms of cocaine that the informant said he had ready for distribution. As Cazares told the DEA undercover agent a few days later, he was "ready to work" and "ready to do what we have to do." *Id.* Over the course of the next week, between August 22, 2008 and August 29, 2008, when Cazares was arrested, he made arrangements to purchase 25 kilograms of the cocaine and then had well over half a million dollars ready and waiting for the informant for the purchase of cocaine. A sentence within the advisory Guidelines range is necessary to reflect the quantity of cocaine and money involved in this transaction and the likely consequences of such significant quantities of cocaine for the communities in which those drugs were intended.

### 2. Need for General Deterrence

Section 3553(a)(2)(B) directs the Court to consider a larger context in imposing a sentence: the need for the sentence imposed to afford adequate deterrence to criminal conduct. This broader consideration focuses not on the need to deter the defendant's criminal conduct but on the need to deter criminal conduct generally. The sentence that is imposed should deter others from engaging in drug-dealing in any form, whether in huge quantities like the defendant, or smaller, street-level, user-quantities.

### 3. Need to for Specific Deterrence

Cazares' criminal history and repeated convictions for narcotics-related crimes demonstrate the need for the sentence imposed to protect the public from further crimes of Cazares. He has shown no ability or inclination to alter his conduct. Accordingly, § 3553(a)(2)(C) recommends a sentence within the advisory Guidelines range.

## IV.     CONCLUSION

For the reasons stated and as explained during the sentencing hearing, the government respectfully requests that this Court impose a sentence within the advisory Guidelines range.


Dated: July 23, 2010                                     Respectfully submitted,

                                                        PATRICK J. FITZGERALD
                                                        United States Attorney

                                                By:     /s/ Megan Cunniff Church
                                                        Megan Cunniff Church
                                                        Assistant United States Attorney
                                                        219 South Dearborn Street
                                                        Chicago, Illinois 60604
                                                        (312) 886-1173